IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNN E. FELDMAN, as Chapter 7 Trustee of the Estate of Image Masters, Inc., et al., | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | No. 13-290 Jointly Consolidated with 13-291 |
| ABN AMRO MORTGAGE GROUP INC., et al., | : : | |
| Defendants. | : | |

Goldberg, J.                                                                                        August 18, 2014

## MEMORANDUM OPINION

### I.      INTRODUCTION

Lynn E. Feldman, Trustee of the estate of Image Masters, Inc. and related entities has filed two adversary proceedings in bankruptcy court against numerous banks and home lenders in connection with a fraud perpetrated through Image Masters, Inc. by its principal, Wesley Snyder. Currently before us are the Trustee's motions to withdraw the references of those proceedings to bankruptcy court pursuant to 28 U.S.C. § 157(d). For the reasons discussed below, the motions will be denied.

### II.     FACTUAL AND PROCEDURAL BACKGROUND

Snyder's scheme, which defrauded more than 800 homeowners and investors out of approximately $65 million, has been explained in detail in previous opinions issued by this Court. See Image Masters, Inc. v. Chase Home Fin., 489 B.R. 375 (E.D. Pa. 2013). A brief summary of this scheme is as follows: Snyder initiated the fraud by inducing homeowners to enter into new home mortgages for more than the amount owed on their existing mortgages, with

1

the proceeds from the new mortgage being used to pay off the existing mortgage. Snyder then convinced the homeowners to turn over the extra, "wrap" amount from the new mortgages to Image Masters, telling the homeowners that the wrap amounts would either be used to pay down the new mortgage or invested on their behalf. The homeowners were then persuaded to sign new mortgages in favor of Image Masters for the same amount, but at a lower interest rate than their new conventional mortgages. Pursuant to the Image Masters mortgages, the homeowners made payments to Image Masters, while Image Masters assumed responsibility for paying the homeowners' conventional mortgages. However, Image Masters had no contractual relationship with the mortgage companies/lenders obligating Image Masters to make payments on the homeowners' behalf. In reality, the wrap amounts were not used to pay down the new mortgages, nor were any profits earned on the money. Instead, Snyder used the wrap amounts to pay down preexisting homeowners' mortgages. The fraud was uncovered when Snyder was unable to generate enough funds to keep the mortgages current. In November 2007, Snyder was charged criminally with fraud and related offenses, and subsequently convicted and sentenced to a substantial period of incarceration.

On September 18, 2007, before the criminal charges were filed, Image Masters and the related entities petitioned for relief under Chapter 7 of the Bankruptcy Code. Lynn E. Feldman ("Trustee") was appointed trustee of the estates on November 27, 2007. The Trustee subsequently initiated two adversary proceedings in bankruptcy court against the Defendant lenders/banks who issued the homeowners their new mortgages, seeking to avoid and recover more than $25 million of allegedly preferential and fraudulent transfers paid by Image Masters, on behalf of the homeowners, to Defendants. On December 17, 2009, the bankruptcy court dismissed both actions in their entirety, holding that the Trustee had failed to state a claim for

either actual or constructive fraud. The bankruptcy court also found that the homeowners were necessary parties under Federal Rule of Civil Procedure 19 whose joinder was required.

On March 11, 2013, we affirmed the bankruptcy court's ruling with respect to the dismissal of the constructive fraud counts and agreed that certain homeowners were necessary parties under Rule 19. However, we vacated the bankruptcy court's ruling with respect to the actual fraud count, and remanded the case to the bankruptcy court for further proceedings. Image Masters, Inc. v. Chase Home Fin., supra.

Since the adversary proceedings were remanded, the bankruptcy court has ordered, and the parties have submitted further briefing on the Rule 19 issue. In addition, the Trustee has demanded a jury trial (without consenting to such a trial in bankruptcy court) and Defendants have moved to strike her demand.

The Trustee has now moved under 28 U.S.C. § 157(d) to withdraw the reference of the adversary proceedings to bankruptcy court. The Trustee argues that her demand for a jury trial, refusal to consent to such a trial in bankruptcy court and the bankruptcy court's lack of authority to enter final judgment on her fraudulent transfer claims make withdrawal mandatory. The Trustee urges that withdrawal at this time will promote judicial efficiency and preserve the resources of the parties by eliminating the round of possible appeals that would result from further litigation in bankruptcy court.

Defendants respond that the bankruptcy court has the authority to enter final judgment on the Trustee's claims; that to the extent that such authority is lacking, the Trustee waived any objection to the bankruptcy court entering judgment; and that the Trustee has waived her right to a jury trial. Defendants ask us to deny the Trustee's motions, or in the alternative, to defer our ruling until the bankruptcy court rules on Defendants' motion to strike the Trustee's demand for

a jury trial.

### III. LEGAL STANDARD

28 U.S.C. § 157(a) allows a district court to refer any or all cases arising under the bankruptcy code to a bankruptcy judge. Section 157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." In determining whether a party has shown cause for withdrawal, courts look to factors including: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping; (3) fostering economical use of resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal. In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990). Courts also consider whether a jury trial has been requested. Pennsylvania Acad. of Music v. Regitz, 2010 WL 4909952 (E.D. Pa. Nov. 30, 2010).

### IV. DISCUSSION

A. Authority of the Bankruptcy Court

The statutory scheme governing the bankruptcy court's jurisdiction was enacted as the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. § 151, et seq. Recognizing the distinction drawn by the United States Supreme Court between "public rights," which may be removed from the jurisdiction of Article III courts, and "private rights," which may not, Congress divided all bankruptcy related matters into "core" and "non-core" proceedings and set out the bankruptcy court's authority to adjudicate them accordingly. Executive Benefits Ins. Agency v. Arkison (In re Bellingham Insurance Agency, Inc.), 134 S.Ct. 2165, 2171 (2014); (citing Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 69-71 (1982)).

4

The statute provides that bankruptcy courts may "hear and determine" cases and core proceedings arising under Title 11 and enter appropriate orders and judgments. 28 U.S.C. § 157(b)(1). Section 157(b)(2) lists various types of core proceedings, including actions to recover fraudulent conveyances. For non-core proceedings that are otherwise related to a bankruptcy, a bankruptcy court may submit proposed findings of fact and conclusions of law to a district court for consideration, or, with the consent of both parties, a district court may refer non-core proceedings to a bankruptcy court to hear and determine. 28 U.S.C. § 157(c)(1)-(2). Notwithstanding § 157's broad grant of power to bankruptcy courts to adjudicate issues arising from and related to bankruptcy, courts have established constitutional limits of that power that conflict with the statutory scheme.

In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), the Supreme Court held that claims for fraudulent transfer, even when filed by a trustee as part of a bankruptcy proceeding, are actions in law rather than equity, and thus do not implicate the process of allowance and disallowance of claims against a debtor's estate that is traditionally the domain of a bankruptcy court. Id. at 57. Consequently, the Court held that a creditor sued by a debtor's estate for fraudulent transfer has a Seventh Amendment right to a jury trial on such claims.[1] However, the Court also noted that a creditor's right to a jury trial in such a situation depends on whether or not it has filed a proof of claim against the estate. When a proof of claim is filed, resolution of the fraudulent transfer claims against the creditor and the creditor's claim against the estate implicates the claims allowance process, and thus subjects the parties to the equitable power of the bankruptcy court. Id. at 58; Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990).

---

[1] While Granfinanciera questioned a litigant's Seventh Amendment right to a jury trial, rather than the power of a bankruptcy court to enter judgment, the Court explained that those two questions required the same answer. Granfinanciera, 492 U.S. at 53.

In Stern v. Marshall, 131 S. Ct. 2594 (2011)—decided after the Trustee in this case initiated the adversary proceedings in bankruptcy court—the Supreme Court held that a debtor's state law counterclaim for tortious interference with an expected inheritance could not be adjudicated by a bankruptcy court. While fraudulent transfer claims were not at issue in Stern, the Court compared the debtor's tortious interference counterclaim to the fraudulent transfer claims at issue in Granfinanciera, stating that neither falls within "the varied formulations of the public rights exception" that allows claims to be adjudicated by a non-Article III court. Rather, the court characterized them as claims under state common law between two private parties. Stern, 131 S.Ct. at 2614.

Following Stern, it fell to the lower courts to identify those types of claims that are statutorily defined as core, but which fall outside the scope of the public rights exception. Among the "Stern claims" that numerous circuits held to be beyond the authority of bankruptcy courts to finally adjudicate were actions for fraudulent transfer filed by a debtor's estate. In re Bellingham, 702 F.3d 553 (9th Cir. 2013), aff'd sub nom. Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165 (2014); Waldman v. Stone, 698 F.3d 910 (6th Cir. 2012); see also In re BP RE, L.P., 735 F.3d 279 (5th Cir. 2013). These courts, however, did not agree on how to proceed when faced with such a claim. In particular, disagreement persisted as to whether litigants can cure a bankruptcy court's lack of authority to enter final judgment through either express or implied consent, whether a bankruptcy court may submit proposed findings of fact and conclusions of law subject to review by an Article III court, or whether adjudication of these types of claims falls exclusively within the domain of Article III courts.

The Supreme Court recently had the opportunity to address this disagreement in In re Bellingham, supra. That case involved a scheme to transfer funds from an insolvent insurance

6

company, Bellingham Insurance Agency, Inc. ("BIA"), to Executive Benefits Insurance Agency, Inc. ("EBIA"), a company incorporated by BIA's owner shortly after BIA ceased operations. BIA's bankruptcy trustee filed a complaint for fraudulent transfer against EBIA in bankruptcy court. The bankruptcy court granted summary judgment in BIA's favor and the district court affirmed. In re Bellingham, 702 F.3d at 557. While the matter was pending on appeal before the Ninth Circuit, the Supreme Court decided Stern. Thereafter, EBIA moved to dismiss the appeal, arguing that the bankruptcy court lacked the authority to enter final judgment on the fraudulent transfer claims as it had done. The Ninth Circuit denied the motion to dismiss and affirmed the district court, holding that EBIA had impliedly consented to the bankruptcy court's entering final judgment through its extensive participation in the litigation. Id. at 568. EBIA then appealed to the Supreme Court, which granted certiorari.

The Supreme Court rejected the view that Stern created a statutory "gap" whereby bankruptcy courts cannot enter final judgment on certain claims considered core under § 157(b), yet are not explicitly authorized to submit proposed findings of fact and conclusions of law on these claims under § 157(c)(1). In re Bellingham, 134 S.Ct. at 2172-73. Rather, the Court explained that this apparent gap is closed by the bankruptcy statute's severability clause, which should guide our resolution of Stern claims. Id. at 2173. The severability clause reads: "If any provision of this Act or the application thereof…is held invalid, the remainder of this Act, or the application of this Act…is not affected thereby." 98 Stat. 344, note following 28 U.S.C. §151. Thus, the Court reasoned that when addressing a Stern claim, § 157(b)'s framework for core proceedings no longer operates, but the remainder of the act is not affected. With the core category unavailable, the Court pointed to § 157(c)(1), which governs non-core claims. The Court instructed that if the claim is "otherwise related to a case under Title 11," it is treated as

7

non-core and governed by § 157(c)(1), which permits a bankruptcy court to submit proposed findings of fact and conclusions of law for de novo review by an Article III court.[2]  In re Bellingham, 134 S.Ct. at 2174; 28 U.S.C. § 157(c)(1).

Here, there is no question that the Trustee's claims are related to the larger bankruptcy proceeding.  However, the question remains as to whether they are Stern claims that must be treated as non-core proceedings under In re Bellingham[3], or whether they are so intertwined with the underlying bankruptcy that they are not Stern claims, but rather claims that the bankruptcy court is authorized to finally adjudicate.

B.  The Trustee's Claims

Courts within this Circuit are split on whether bankruptcy courts can enter final judgment on fraudulent transfer claims post-Stern.  See In re Int'l Auction & Appraisal Servs. LLC, 493 B.R. 460, 465 (Bankr. M.D. Pa. 2013) (Stern and Granfinanciera together preclude bankruptcy court from entering judgment on fraudulent transfer claims); In re Transcon. Refrigerated Lines, Inc., 494 B.R. 816, 819 (Bankr. M.D. Pa. 2013) (adopting reasoning of In re Bellingham); but see In re Direct Response Media, Inc., 466 B.R. 626, 644 (Bankr. D. Del. 2012) (Stern limited to

---

[2] Because In re Bellingham's procedural posture did not require it, the Court declined to decide the question of whether a bankruptcy court can finally adjudicate Stern claims with either the express or implied consent of the litigants.  Absent further guidance from the Court, and because it is not necessary in ruling on this motion, we too decline to address the parties' arguments as to whether the Trustee waived her right to object to the bankruptcy court's lack of authority to enter final judgment.  Whether the bankruptcy court enters an appealable final judgment pursuant to a finding that the Trustee impliedly consented to its doing so, or submits proposed findings of fact and conclusions of law subject to our de novo review, the parties will effectively receive the same review.  See In re Bellingham, 134 S.Ct. at 2175.

[3] The Trustee argues that because she is entitled to a jury trial, the Seventh Amendment bars us from adopting any proposed findings of facts submitted by the bankruptcy court, as fact-finding is tasked to the jury alone.  Defendants' motion to strike the Trustee's jury demand is currently pending before the bankruptcy court.  Even if the Trustee's jury demand survives Defendants' motion to strike, while fact-finding is reserved to the jury, the bankruptcy court may submit proposed conclusions of law on dispositive motions for our de novo review.

8

state law counterclaims under § 157(b)(2)(c)); In re DBSI, Inc., 467 B.R. 767, 772 (Bankr. D. Del. 2012) (adopting a similarly narrow interpretation). Courts adopting the narrow view and applying Stern only to claims under § 157(b)(2)(c) rely on limiting language interspersed throughout the Stern opinion. We find, however, that a broader view best comports with Stern's reasoning. By directly tying the counterclaims in Stern to the fraudulent transfer claims in Granfinanciera, the Court signaled that claims for fraudulent transfer do not fall within the public rights exception and are thus beyond the authority of bankruptcy courts to adjudicate.[4]

In interpreting Stern broadly, we reject Defendants' contention that the Third Circuit recently adopted a narrower view in In re New Century Holdings, Inc., 544 F. App'x 73 (3d Cir. 2013). At issue in that case was a creditor's claim that she was fraudulently induced to enter into a settlement of an adversary proceeding that extinguished all of her claims against a debtor's estate. The creditor argued that her fraudulent inducement claim was a private cause of action beyond the scope of the bankruptcy court's authority to adjudicate. The Third Circuit disagreed, finding that the claim was "not independent of the bankruptcy but rather irreversibly intertwined" with the resolution of the creditor's claims against the estate. Id. at 72.

---

[4]Additionally, we disagree that some of the language ostensibly supporting the narrow view is limiting at all. For example, numerous courts point to the Stern's prediction that its removal of certain counterclaims from the bankruptcy jurisdiction would not meaningfully change the division of labor between district and bankruptcy courts, which is said to indicate that the Court could not possibly have intended to remove broad categories of claims from the bankruptcy court's jurisdiction. See, e.g., In re DBSI, Inc., 467 B.R. at 772; In re USDigital, Inc., 461 B.R. 276, 290 (Bankr. D. Del. 2011). However, in making that statement, the Court expressly echoed the Amicus Curiae brief of the United States, which explained that the narrow question presented was whether a bankruptcy court could enter final judgment, rather than submit proposed findings of fact and conclusions of law on the claims at issue. Brief for United States as Amicus Curiae, p. 23, Stern, supra. In other words, the division of labor remains largely unchanged not because Stern encompasses few claims, but because there is little practical difference between a bankruptcy court's entering final judgment appealable to a district court and its submitting proposed findings of facts and conclusions of law for de novo review. Indeed, the Court reiterated this position in In re Bellingham.

Here, Defendants similarly argue that the nature of the Trustee's claims, joinder of the homeowners under Rule 19 and the filing of a proof of claim against the estate by Defendant CitiMortgage, Inc. ("Citi") suffice to tie the Trustee's claims to the underlying bankruptcy such that the bankruptcy court is authorized to adjudicate them.  We disagree and conclude that the Trustee's claims are distinguishable from the claims in New Century.

The creditor in New Century had filed both an adversary proceeding and a proof of claim against the estate.  After the creditor and the estate entered into a settlement agreement that would extinguish all of the creditor's claims against the estate, the bankruptcy court dismissed the case.  Thereafter, the creditor sought to reopen the case, claiming that she was fraudulently induced to enter into the settlement agreement.  She objected to the bankruptcy court adjudicating her fraudulent inducement claim on the grounds that because it was not a core proceeding, Stern dictated that it must be heard by an Article III court.  The Third Circuit held that "direct claims by a creditor that the Debtors fraudulently induced her to enter into a settlement concerning indisputably core proceedings within the jurisdiction of the bankruptcy court" were irreversibly intertwined with the bankruptcy court-approved resolution of claims against the estate.  New Century, 544 Fed. App'x at 73.  Thus, the court found the fraud claim to be distinguishable from the state law counterclaims in Stern, and concluded that Stern was inapplicable.

The case before us is different than New Century, because adjudication of the Trustee's claims does not directly require resolving claims against the estate, nor does it involve interpreting or enforcing a bankruptcy court's previously entered order resolving claims.  Rather, if successful, the Trustee's claims will augment the estate through avoidance or recovery of payments by the estate to Defendants.  Thus, while the fraudulent transfer claims may be related

10

to the bankruptcy, they are not "irreversibly intertwined" with the resolution of claims against the estate. Id.; see Waldman, 698 F.3d at 919 ("when a debtor pleads an action arising only under state-law…or when the debtor pleads an action that would augment the bankrupt estate, but not 'necessarily be resolved in the claims allowance process[,]' then the bankruptcy court is constitutionally prohibited from entering final judgment.") (quoting Stern, 131 S.Ct. at 2617). Defendants contend that by highlighting Stern's limiting language, New Century requires that we interpret Stern narrowly. Nonetheless, as Defendants themselves note, the key distinction between the claims in Stern and those in New Century is that the latter were finally resolvable as part of the claims allowance process, while the former were not. Because, as discussed below, we disagree with Defendants that the Trustee's claims must be resolved as part of the claims allowance process, we conclude that New Century does not apply.

It is generally true that when a creditor's proof of claim is met with a fraudulent transfer action filed by the debtor, the latter becomes part of the claims allowance process. However, we are also not persuaded that the single proof of claim filed by Citi against the estate implicates the claims allowance process. Langenkamp v. Culp, 498 U.S. at 44 (holding that by filing claims against the estate, debtor triggers the claims allowance process and subjects himself to equitable power of the bankruptcy court). Citi states that it filed the claim because of actual or threatened litigation by the homeowners against Citi and because if it were to be found liable to the homeowners for conduct arising out of the Image Masters fraud, it would be entitled to indemnity from the estate. (Trustee's Reply. Br., Ex. A.) Citi also asserts a right of subrogation to the claims of any homeowners who fail to file timely claims against the estate. Id.

To date, there has been no finding that Defendants are liable to the homeowners. To the contrary, two class action suits filed by homeowners against Defendants have been dismissed in

11

Defendants' favor.[5]  Based on the foregoing, we are not prepared to find that a single, contingent proof of claim, filed by one of nearly two dozen defendants makes these adversary proceedings "integral to the restructuring of the debtor-creditor relationship" through the bankruptcy court's jurisdiction.  Langenkamp v. Culp, 498 U.S. at 44.

Nor do we find that joinder of the homeowners requires adjudication of the Trustee's claims in bankruptcy court.  In their motions to dismiss the Trustee's adversary complaints, Defendants argued that the homeowners were necessary parties under Rule 19(a)(l)(B)(i) and 19(a)(l)(B)(ii).  Defendants asserted, and the bankruptcy court agreed, that proceeding without the homeowners would (1) impair the homeowners' ability to protect their interests, as any payments to Defendants recovered by the estate may result in Defendants either seeking reimbursement from the homeowners or declaring the homeowners in default on their mortgages; and (2) potentially subject Defendants to double or unwarranted losses through contradictory constructions of the homeowners' loan contracts in related cases.  We agreed on appeal that homeowners with current mortgages are necessary parties under Rule 19(a)(l)(B)(i) and remanded for further proceedings to determine which homeowners must be joined.  Defendants now argue that joinder of the homeowners—over 600 of whom have filed proofs of claim against the estate—renders the claims or potential claims against the homeowners and those of the Trustee against Defendants irreversibly intertwined.

In response, the Trustee directs us to In re New Era, 201 B.R. 382 (E.D. Pa. 1996).  In that case, as in the present case, the estate of a debtor who had perpetrated a pyramid scheme sought recovery of loan transfers that it alleged the defendant knew, or had reasonable basis to suspect were the proceeds of a fraud.  The defendant had not filed a proof of claim against the

---

[5] The two homeowner class actions are Lorah v. SunTrust Mortgage, Inc., Civ. A. No. 08-0703 (E.D. Pa.), and Jones v. ABN AMRO Mortgage Grp., Inc., Civ. A. No. 07-4328 (E.D. Pa.).

estate, but had filed third-party complaints seeking indemnity or contribution from thirty-nine entities that the defendant alleged had received proceeds of the fraud in the form of loans from the defendant. In determining whether it had jurisdiction to hear the third-party complaints, the bankruptcy court found that "[w]hether or not the third-party plaintiff obtains contribution or indemnity from the third-party defendants (and thereby is made whole) has no effect on the bankruptcy estate." Id. at 390. The court disagreed with the defendants' argument that the trustee's claims and defendants' claims against the homeowners were irreversibly intertwined because they arose out of the same nucleus of facts. The court explained that "[s]hared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy." Id. at 391 (quoting Matter of Zale Corp., 62 F. 3d 746, 753-54 (5th Cir. 1995)). The court further rejected the defendant's argument that existing or potential claims by the third parties against the estate implicate the bankruptcy case for the purposes of hearing the third-party complaints.

Here, faced with similar facts, Defendants have failed to establish that joinder of the homeowners implicates the claims allowance process. It is worth repeating that the Trustee's claims can only augment the estate, while Defendants' claims against the homeowners will not affect the estate at all. While Defendants argue that proofs of claim filed by the homeowners against the estate are intertwined with the Trustee's claims against Defendants, they fail to explain the potential effects of one on the other.[6] Accordingly, we find that the Trustee's claims

---

[6] Defendants argue generally that "resolution of the Trustee's claims and the homeowners' proofs of claims will necessarily 'become integral to restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." (Defs.' Sur-Reply 8.) However, they explain in two footnotes only the manner in which any avoided payments will be disbursed by the estate—which is determined by the bankruptcy code and not the outcome of the Trustee's claims—and the effect of any determination of the Trustee's claims on the relationship between the homeowners and Defendants.

13

are not intertwined with the bankruptcy such that the bankruptcy court may enter final judgment, but rather they are <u>Stern</u> claims for which the bankruptcy court can submit proposed findings of fact and conclusions of law pursuant to § 157(c)(1).

    C.  <u>Is there Cause to Withdraw the Reference?</u>

In light of <u>In re Bellingham</u>, the Trustee's contention that confusion surrounding the scope of bankruptcy court's authority weighs in favor of immediate withdrawal is largely moot. It is now clear that the bankruptcy court can conduct the necessary pretrial proceedings, including submitting proposed findings on dispositive motions, without overstepping the bounds of its constitutional authority. That said, a reference may be withdrawn "for cause shown," and the Trustee presses that cause exists in this case. 28 U.S.C. § 157(d). The party seeking withdrawal bears the burden to show cause. <u>In re NDEP Corp.</u>, 203 B.R. 905, 907 (D. Del. 1996). We look to the non-exclusive factors annunciated in <u>In re Pruitt</u>, <u>supra</u>, along with the Trustee's demand for a jury trial, in determining whether the Trustee has shown cause.

    1.  <u>Uniformity of Bankruptcy Administration</u>

The first factor to consider in determining whether the reference should be withdrawn is the need to promote uniformity of the bankruptcy administration. While leaving the bankruptcy court to preside over both the underlying bankruptcy and related proceedings may aid it in maintaining uniformity to some degree, we also agree with the Trustee that the fraudulent transfer claims are, for the most part, severable from the bankruptcy itself. These are actions that, if successful, will augment the estate, and thus do not implicate the claims allowance process at the heart of the bankruptcy. Accordingly, this factor does not weigh heavily in favor of either party.

2. <u>Discouraging Forum Shopping</u>

The second factor—discouraging forum shopping—weighs heavily against withdrawal. The Trustee filed both adversary proceedings in 2009. At that time, the Trustee freely chose to litigate in bankruptcy court, rather than district court. The adversary proceedings reached this Court for the first time on appeal after the bankruptcy court dismissed the Trustee's claims. We disagreed with certain aspects of the bankruptcy court's decision and remanded for further proceedings. Thereafter, with issues on which the Trustee has already received unfavorable rulings in bankruptcy court looming, she moved for withdrawal, citing the potential constitutional issues that arose in <u>Stern</u>'s wake. Those issues have largely been resolved and it is clear that the bankruptcy court, where the Trustee originally filed her claims, may proceed.

3. <u>Fostering Economical Use of Resources/Expediting the Bankruptcy Process</u>

Next, we look to whether withdrawal would foster economical use of resources. The experience and expertise of the bankruptcy court in connection with these matters must be considered. Given the resources already expended in that forum, and the possibility that the adversary proceedings will never reach the stage at which a jury trial is held in this Court, we find that economy of both the Court and the parties' resources is best served by denying the Trustee's motion. The same reasoning applies to the next factor—expediting the bankruptcy process. With the very real possibility that the actions will be disposed of prior to reaching a jury, withdrawing now will not expedite the termination of either the adversary proceedings or the larger bankruptcy. Although we understand that it is possible that this Court will have to review recommendations on dispositive motions made by the bankruptcy court, we conclude that conservation of resources weighs against the Trustee's motion.

4. <u>Timing of the Motions for Withdrawal</u>

We next consider the timing of the request for withdrawal. While these proceedings are still in the pleading stage, more than four years passed between the filing of the complaints and the Trustee's motion for withdrawal. While the Trustee identifies certain time periods during which a motion to withdrawal would have been procedurally improper—such as while the proceedings were pending before us on appeal from the bankruptcy court's dismissal—the fact remains that the Trustee had ample opportunity to seek withdrawal well before she sought such relief. The Trustee argues that she moved to withdraw at the first opportunity after <u>Stern</u> put her on notice of her right to a jury trial in district court. We disagree. The right to a jury trial on fraudulent transfer claims was articulated by the Supreme Court at least as far back as <u>Granfinanciera</u>. Arguably, <u>Stern</u> first alerted the Trustee to the constitutional problem with a bankruptcy court entering final judgment on her claims, but with that problem largely resolved, we are left with a significant period of time during which the Trustee willingly litigated her claims in bankruptcy court without making a jury demand or moving to withdraw.

5. <u>The Trustee's Jury Demand</u>

Finally, the Trustee argues that her jury trial demand and refusal to consent to a jury trial in bankruptcy court mandate eventual withdrawal, and that in such cases, early withdrawal is preferable. As discussed above, should the Trustee's jury demand survive Defendants' motion to strike, any jury trial must be held in district court. However, it is also clear, following <u>In re Bellingham</u>, that the bankruptcy court may preside over pretrial matters, including dispositive motions that (by way of Report and Recommendation) could obviate the need for a jury trial altogether. Consequently, we do not agree with the Trustee that the prospect of a jury trial at some later date mandates immediate withdrawal. Moreover, the cases that the Trustee cites in

16

support of immediate withdrawal only serve to highlight the procedural aspects of this case that weigh against her. For example, in In re Pressman, 2013 WL 3989671, the bankruptcy court recommended immediate withdrawal where a jury trial was demanded without the express consent of both parties. While In re Pressman was similarly in the pleading stage when the motion for withdrawal was filed, only two months had passed between the filing of the complaint and the bankruptcy court's recommendation.[7] Here, by contrast, more than four years have passed between the filing of the complaints and the motions to withdraw, during which time the economy of withdrawal gradually eroded as the bankruptcy court's experience and expertise in these matters increased. Further, In re Pressman followed a common procedural path, where the plaintiff filed in bankruptcy court, one of the parties demanded a jury trial, and the defendant refused to consent to a jury trial in that forum.[8] Here, it was the Trustee who affirmatively chose to litigate in bankruptcy court, demanded a jury trial, and then refused to consent to a trial in that forum. While neither the passage of time, nor the Trustee's about-face concerning her choice of forum are themselves dispositive, neither is her demand for a jury trial in this Court. Instead, we

---

[7] The majority of cases that the Trustee cites in support of immediate withdrawal involve similar circumstances: in Shalom Torah Centers v. Philadelphia Indem. Ins. Companies, 2011 WL 1322295 (D.N.J. Mar. 31, 2011), approximate three months passed between the filing of the complaint and the motion to withdraw the reference; in In re NDEP Corp., 203 B.R. 905 (D. Del. 1996), approximately three months passed; in Valley Forge Plaza Associates v. Fireman's Fund Ins. Companies, 107 B.R. 514 (E.D. Pa. 1989), approximately one month passed.

In re Nw. Corp., 2005 WL 2320113 (D. Del. Sept. 22, 2005) and In re The IT Grp., Inc., 2005 WL 936992 (D. Del. Apr. 21, 2005) involved longer delays, but in each, the requested withdrawal was intended to consolidate the adversary proceedings with related cases pending in district court. In the latter, the motion to withdraw was not opposed.

[8] See also Shalom Torah Centers; In re NDEP Corp. Among the cases that the Trustee cites, only in In re Nw. Corp. was the motion to withdraw filed by the plaintiff. In that case, the plaintiff filed the motion seeking to consolidate that case with an action originally filed in Montana state court, which was removed to federal district court and transferred to the District of Delaware, where the adversary proceeding was ongoing.

17

must consider all of the relevant factors. In so doing, we find that withdrawal is not appropriate at this time.

## V.     CONCLUSION

For the reasons set forth above, the Trustee's motion to withdraw the references of the adversary proceedings to bankruptcy court will be denied. Our order follows.